Harold LEWIS, Plaintiff,

v.

**AETNA LIFE INSURANCE COMPANY,
and Kmart Corporation,
Defendants.**

No. CIV. A. 97–1230–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 11, 1998.

Victor M. Glasberg, Jeanne Goldberg, Victor M. Glasberg & Associates, Alexandria, VA, for Plaintiff.

Phyllis E. Andes, John C. Fox, Craig A. Selness, Fenwick & West, LLP, Washington, DC, for Kmart.

Ronald S. Cooper, Tracy Zorpette, Brian A. Davis, Steptoe & Johnson, LLP, Washington, DC, for Aetna.

### *MEMORANDUM OPINION*

BRINKEMA, District Judge.

#### I.

The facts of this case have been stated in detail in previous opinions but are summarized briefly here for reasons of clarity. Plaintiff Harold Lewis has suffered from severe depression since 1979, but obtained treatment for his condition and was able to function normally. In 1984, Lewis began working for defendant Kmart Corporation ("Kmart"). In 1987, by virtue of his employment, he was offered and accepted an employee disability benefit plan issued by Aetna Life Insurance Company ("Aetna"). The plan provided that physical disabilities would be covered through age sixty-five, but terminated benefits for mental disabilities after twenty-four months of coverage. In 1993, plaintiff was offered and accepted a successor plan, again provided by Aetna, which contained a similar distinction in coverage between physical and mental disabilities.

In March of 1995, plaintiff's depression worsened, and he became unable to work. At first, he went on medical leave under Kmart's leave program. However, by September of 1995, he was on long-term disability and began receiving monthly long-term disability benefit payments of $2,488.16 under the Aetna plan. By the Spring of 1996, plaintiff had learned that Aetna had classified his disability as "mental" in nature and therefore subject to the two-year cap. In accordance with this classification, Aetna terminated plaintiff's benefits on September 18, 1997, two years after he first began receiving long term disability payments.

On July 2, 1996, several months before the termination of his benefits, plaintiff filed a charge with the EEOC alleging that he had been subjected to discrimination on the basis of disability because his condition had been classified as "mental" and therefore subject to the Aetna plan's twenty-four-month cutoff.

*See* EEOC Charge (attached as Aetna Ex. D.).

Plaintiff then brought suit in this Court on August 6, 1997, alleging that defendants Kmart and Aetna had discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Specifically, as to Kmart, plaintiff alleged that Kmart violated his right under ADA Title I to terms and conditions of employment free from discrimination based on his disability. In various pretrial rulings, the Court ultimately granted summary judgment in Aetna's favor and narrowed the issues for trial to: (1) the date plaintiff became aware that his condition would be classified as "mental" under the benefit plan at issue and that he would receive inferior coverage as a result of such classification, and (2) whether Kmart had a sufficient actuarial justification for distinguishing between mental and physical conditions in the employee benefit plan at issue.

A bench trial was held before this Court on April 13, 1998, and post-trial briefs have now been filed. Having considered the arguments of both parties, the Court makes the findings set forth below.

## II.

### Notice and Accrual of ADA Claims

■ Mrs. Lewis testified at trial that the Lewises knew by June 17, 1996 that plaintiff's disability had been classified as "mental" under a parallel Aetna health insurance plan, and that he would receive inferior disability benefits as a result.[1] *See* Trial Transcript at 112–14. According to Mrs. Lewis, plaintiff and she assumed that Aetna would treat his long-term disability benefits similarly, and that the disability benefits Lewis had begun receiving in September of 1995 would be subject to the two-year cap. *See id.* Plaintiff therefore alleged in his July 2, 1996, EEOC charge that "I am unfairly being paid disability benefits for only a 2 year duration with respect to my mental disability in accordance with the terms of [Kmart's] employee disability benefits plan,"

and gave June 17, 1996, as the latest date of discrimination. Pl. Trial Ex. 16 (EEOC Charge). Kmart presented no evidence on this issue and did not contest Mrs. Lewis' testimony. Accordingly, we find that Mrs. Lewis' testimony and the contents of plaintiff's EEOC Charge establish that the Lewises had notice as of June 17, 1996, of any discrimination against Mr. Lewis on the basis of his mental disability, and that the statute of limitations on plaintiff's cause of action began to run at that time. Plaintiff filed his EEOC Charge on July 2, 1996, sixteen days after learning that his disability would be classified as "mental" and well within the applicable 180–day limitations period. *See* February 11, 1998 Memorandum Opinion at 13. We therefore reaffirm our earlier holding that plaintiff's Title I claim against Kmart was timely filed. *See id.*

### Actuarial Justification, Subterfuge and the § 501(c) "Safe Harbor"

■ ADA § 501(c) provides that Title I:

shall not be construed to prohibit or restrict ... (2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law.

42 U.S.C. § 12201(c). However, the section goes on to state that: "Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes of [Title I]." *Id.* Thus, § 501(c) protects the decisions of plan sponsors and administrators only to the extent that they are consistent with state law. *See* 42 U.S.C. § 12201(c); H.R.Rep. No. 101–485, pt. 2 at 136 (1989) ("Virtually all States prohibit unfair discrimination among persons of the same class and equal expectation of life. The ADA adopts this prohibition of discrimination.").

Kmart argues that Michigan law governs whether the Aetna plan is consistent with state law for purposes of § 501(c), and that

---

**1.** Specifically, plaintiff's Aetna health insurance plan capped benefits for mental disability-related health expenses at $2500. *See* Pl. Trial Ex. 16 (EEOC Charge).

the Aetna plan satisfies the laws of that state. In support, Kmart relies on a plan provision which states "[t]his policy will be construed in line with the law of the jurisdiction in which it is delivered." It is uncontested that the Aetna plan was delivered in Michigan. Kmart therefore argues that the plan need only comply with Michigan law. Plaintiff counters that a contractual choice of law clause applies only to breach of contract disputes and cannot constrain this Court's interpretation of federal statutes. Instead, plaintiff argues that Virginia law, which expressly applies to all foreign and domestic corporations offering insurance within the Commonwealth, should guide our analysis.

We find plaintiff's position to be the more convincing one. Although parties may agree that the law of a particular state will govern contractual disputes between them, the interpretation of federal statutes such as 42 U.S.C. § 12201(c) is a core duty of this Court which the parties may not bargain away. Moreover, this case does not require the Court to construe the language of the Aetna plan but to determine whether its plain language violates the ADA, and is therefore outside the choice of law provision agreed to by the parties. Given Congress' apparent purpose in § 501(c) to avoid unnecessary disruption of state insurance regulation, we instead conclude that the § 501(c) consistency of a challenged disability plan is best examined within the context of the state where the disabled person lives, is employed, and receives his insurance benefits. Other courts construing § 501(c) have reached the same conclusion. *See Doukas v. Metropolitan Life Ins. Co.*, 950 F.Supp. 422, 428–29 (D.N.H. 1996) (applying law of forum state to determine insurer's protection under § 501(c) safe harbor); *Chabner v. United Omaha Life Ins. Co.*, 994 F.Supp. 1185, at 1190 (N.D.Cal.1998) (explaining that § 501(c) safe harbor incorporates state law and applying law of forum state). In this case, plaintiff lives, was employed, and received insurance benefits in Virginia. We therefore hold that Kmart's decision to offer the Aetna plan must comport with Virginia law in order for it to be protected under § 501(c).

■ Virginia Code § 38.2–508 states:

No person shall [r]efuse to insure, refuse to continue to insure, or limit the amount, extent or kind of insurance coverage available to an individual ... solely because of ... mental or physical impairments, unless the refusal, limitation or rate differential is based on sound actuarial principles.

Accordingly, plaintiff argues, Kmart must demonstrate that its decision to offer an insurance plan limiting disability coverage for those with mental disabilities was based on sound actuarial principles in order for the decision to be protected by § 501(c).

Kmart has not met this burden, and instead acknowledges that it had no actuarial justification for choosing the 1987 and 1993 Aetna long-term disability plans containing the mental/physical distinction at issue. *See* Trial Transcript at 145 ("There is no need for us to talk about cost actuarial. That's an alternative defense which Kmart did not seek to rely upon in this case."). Specifically, Kmart presented evidence that it was unaware in 1987 and 1993 that plans without a cap on mental disability benefits existed, despite evidence that Aetna's two largest clients used uncapped plans, that such plans have been available since the mid–1970's, and that Aetna was prepared to offer such a plan to Kmart but that Kmart requested a capped plan. *See* Def. Exs. 38 (Moreford Aff.), 39 (DeWenter Aff.), 41 (Welsh Aff.), 52 (Welsh Dep.) at 32–33, 58–59. Thus, Kmart chose both the 1987 and 1993 capped plans without engaging in any sort of cost analysis to determine whether plans which discriminated between mental and physical disabilities were less expensive than those which did not. *See* Def. Ex. 41 (Welsh Aff.) at ¶¶ 9, 10.

■ Despite this lack of actuarial justification, Kmart argues that the Aetna plan must be deemed consistent with Virginia law because the Virginia Bureau of Insurance approved it. *See* Def. Exs. 51 (March 14, 1990, Letter from Aetna to Virginia Bureau of Insurance), 54 (March 16, 1994, Letter from Aetna to Virginia Bureau of Insurance). As an initial matter, defendant's assertion appears factually incorrect. Although the Virginia Bureau of Insurance approved Aetna's 1987 plan containing a cap on mental disability benefits, it has not approved the exact

language of plaintiff's 1993 plan, which contains significant differences from earlier state-approved plans. *See* Pl. Proposed Findings of Fact and Conclusions of Law at ¶ 49; Pl. Exs. 8, 9, 10. More importantly, we cannot accept a state regulatory body's unelaborated approval of a plan as controlling authority that the plan is non-discriminatory within the meaning of Virginia Code § 38.2–508. That is particularly true where, as here, there is no evidence that the Virginia Bureau of Insurance considered possible actuarial justifications in its decision to approve the plan. Instead, we conclude that the clear language of § 38.2–508 requires that limitations in coverage based on physical or mental disabilities be based on sound actuarial principles, and that Kmart has acknowledged a lack of such justification here. Accordingly, we hold that Kmart's selection of the 1993 Aetna plan, which specially limits benefits for disabilities that are mental rather than physical, was not consistent with Virginia state law, and that Kmart is therefore not entitled to the protections of the § 501(c) safe harbor.[2]

■ Rather than relying on actuarial justification, Kmart argues that the Aetna plan cannot be considered a discriminatory "subterfuge" to avoid the ADA because Kmart subscribed to it years before the enactment of that statute. In support, Kmart cites *Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), in which the Supreme Court held that an employee benefit plan could not be a "subterfuge" to avoid the Age Discrimination in Employment Act ("ADEA") because the plan was adopted before the enactment of the ADEA.

We agree with plaintiff that *Betts* has no application here because the Aetna plan at issue was adopted in 1993, well after the enactment of the ADA. Unlike the defendant in *Betts*, Kmart chose the challenged 1993 disability plan in the face of ADA provisions which expressly prohibit an employer from discriminating against an employee on the

basis of that employee's disability. *See* 42 U.S.C. § 12112(a). Although Kmart may legally have offered benefit plans limiting mental disability benefits before 1990, once the ADA was enacted, Kmart's legal obligations changed. By 1993, when Kmart chose a new disability plan, it had to comply with the ADA. Therefore, Kmart cannot claim, as did the *Betts* defendant, that it adopted the challenged plan in the absence of laws prohibiting the type of discrimination at issue.

Furthermore, Congress, when enacting the ADA, expressly declined to apply *Betts* to the ADA's § 501(c) definition of "subterfuge," explaining that:

> The term 'subterfuge' is used in the ADA simply to denote a means of evading the purposes of the ADA. It does not mean that there must be some malicious intent on the part of the insurance company or other organization, nor does it mean that a plan is automatically shielded because it was put into place before the ADA was passed. Indeed, there is currently a bill moving through Congress to overturn the Betts decision and we have no intention of repeating a decision with which we do not agree.

Statement of Rep. Edwards, 136 Cong. Rec. H4624 (daily ed. May 17, 1990); *see also* Statement of Sen. Kennedy, 136 Cong. Rec. S9697 (daily ed. July 13, 1990); Statement of Rep. Owens, 136 Cong. Rec. H4623 (daily ed. July 12, 1990); Statement of Rep. Waxman, 136 Cong. Rec. H4626 (daily ed. July 12, 1990). Instead, Congress explained that:

> section § 501(c) makes it clear that insurers may continue to sell and to underwrite individuals applying for life, health, or other insurance on an individually underwritten basis, or to service such products, so long as the standards used are based on sound actuarial data and not on speculation.... In sum, [the ADA] requires that underwriting and classification of risks be based on sound actuarial principles or be related to actual or reasonably anticipated experience.

---

2. Michigan law contains a similar provision prohibiting "unfair discrimination" between individuals of the "same class" or facing the "same hazard." *See* Mi. Compiled Laws Ann.

§ 500.2020. Accordingly, Kmart's contention that Michigan law governs here even if true, would not change our analysis.

H.R.Rep. No. 45, 101st Cong., 2d Sess., pt. 3, at 70 (1990).

Previously, we explained that "the ADA clearly prohibits discrimination on the basis of disability absent some actuarial justification." October 24, 1997, Mem. Op. at 29. In this case, Kmart offered plaintiff insurance benefits which provided inferior coverage for mental as opposed to physical disabilities. It has demonstrated no actuarial justification for the dichotomy and is otherwise ineligible for the protections of the § 501(c) safe harbor. We therefore conclude that Kmart has violated 42 U.S.C. § 12112 by offering Lewis a benefit plan which discriminates against him on the basis of his mental disability. Having reached this conclusion, we must determine a proper remedy.

**Damages**

█ Kmart argues that, even if the 1993 Aetna plan violates the ADA, it would be inappropriate for this Court to mandate the continued payment of benefits under the rule established in *Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). In that case, the Los Angeles Department of Water and Power required female employees to make higher contributions toward their pensions than their male counterparts, based on actuarial evidence that they would live longer and would therefore use more benefits over time. *See id.* at 704–07, 98 S.Ct. 1370. Female employees brought a class action suit against the Department, arguing that the different contribution rates applied to women violated Title VII's prohibition against gender discrimination. The Court agreed and held the plan to be unlawfully discriminatory, but concluded that it would be inappropriate to award a retroactive return of the female workers' excess plan contributions. *See id.* at 718, 98 S.Ct. 1370. The Court reasoned that although retroactive awards are presumptively appropriate in discrimination cases, the large number of employees participating in the action would cause retroactive liability to have a devastating impact on the pension plan and would threaten to upset a nationwide insurance regime premised on such longevity-based differences. *See id.* at 718, 98 S.Ct. 1370 (citing *Albemarle Paper*

*Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)), *id.* at 719–23, 98 S.Ct. 1370. The Court also noted that the application of Title VII to pension plans was unknown at the time plan administrators adopted such differentials, and that plan administrators could reasonably have believed their practices to be within the law. *See id.* at 720–24, 98 S.Ct. 1370.

In this case, Kmart argues that forcing it to provide Lewis with long-term disability benefits until he either returns to work or turns sixty-five would unfairly penalize Kmart for selecting a plan it reasonably believed was lawful, and would have a devastating effect on its ability to provide disability insurance.

In response, plaintiff raises several equitable considerations which we agree distinguish this case from *Manhart*. First, this case concerns the benefits of one person rather than an entire class of benefit recipients, making the effect of a judgment in plaintiff's favor far less onerous. Indeed, throughout this litigation, both parties have stressed that Lewis may eventually recover sufficiently from his depression to return to work, obviating the need for Kmart to continue to pay him benefits.

Second, a judgment against Kmart will not result in a windfall for Lewis or for other mentally disabled employees. In *Manhart*, ordering the defendant to refund plan contributions would have allowed women, who as a group outlive men by several years, to receive more pension benefits for the same contribution as their male counterparts. In Lewis' case, all employees participating in the plan paid the same premium, thus, there would be no inherent unfairness in awarding him benefits until age sixty-five, because in our case, mentally disabled employees by paying the same premium for less benefits have effectively been subsidizing the benefits of the physically disabled.

Third, a judgment against Kmart will not injure Kmart in any way because the Aetna plan is entirely employee-funded. Nor has Kmart presented any evidence that requiring a non-discriminatory plan can be expected to render the cost of disability insurance unaffordable or drive employees to desert Kmart

for employment elsewhere. In contrast, plaintiff has presented evidence that eliminating the distinction between mental and physical disabilities can be expected to raise premiums, using liberal estimates, by only about $2.68 a month, an increase unlikely to deter present or future Kmart employees. *See* Anderson 2d Aff. at ¶ 4.[3]

Fourth, and most importantly, Kmart has presented no evidence to support its argument that requiring it to offer a non-discriminatory disability benefits plan would deleteriously affect the insurance industry as a whole. Rather, the documentary evidence shows the opposite to be true: Aetna's own expert averred that Aetna's two largest customers use non-discriminatory plans, and that such plans are both feasible and available. *See* Def. Exs. 41 (Welsh Aff.), 52 (Welsh Dep.) at 32–33, 58–59. As such, Kmart cannot convincingly argue that prohibiting discrimination against the mentally disabled in disability insurance plans raises the dire economic consequences which concerned the Supreme Court in *Manhart.*

Finally, we agree with plaintiff that, at the time it adopted the 1993 Aetna plan, Kmart should have been on notice of ADA provisions which specifically prohibit employers from discriminating on the basis of disability within the context of insurance plans. Kmart's argument that it acted innocently in the absence of laws addressing disability discrimination in insurance plans is therefore unconvincing.

Ultimately, we are left with the Supreme Court's rule that retroactive relief is presumptively appropriate in discrimination cases unless strong equitable concerns mandate otherwise. *See Manhart,* 435 U.S. at 719, 98 S.Ct. 1370 ("The ... presumption in favor of retroactive liability can seldom be overcome"), *id.* at 723, 98 S.Ct. 1370. For all of the above reasons, we conclude that the concerns which convinced the Supreme Court to reject retroactive relief in *Manhart* do not pertain in this case, and do not prohibit us from mandating the continued future payment of disability benefits here.

### *The Appropriate Measure of Damages*

■ Kmart argues that, in the event we order the continued payment of disability benefits, plaintiff must continue to be disabled in order to receive benefits, and his benefit payments must be adjusted to reflect the disability payments he has received from Social Security. We agree with this contention, and plaintiff does not contest it. Accordingly, we conclude that Kmart has discriminated against plaintiff on the basis of his disability in violation of ADA Title I, 42 U.S.C. § 12112, and that plaintiff is entitled to the following relief: (1) a declaration that the two-year limit on disability benefits for employees disabled by mental illness violates Title I of the ADA; and (2) a permanent injunction mandating the continued payment of monthly disability benefits according to the terms presented by Kmart in its Post–Trial Memorandum Regarding Damages, so long as plaintiff remains disabled within the meaning of the plan, until he reaches age sixty-five.

Specifically, Kmart will be required to pay benefits as follows:

1. September 19, 1997–
   December 31, 1997  —
   
   $3,234.61 (65% of pre-disability earnings)
   1,077.00 (SSDIB)
   2,157.61 per month

   Pro-rated for 9/19/97—12/31/97 = $7,263.95

2. January 1, 1998–
   December 31, 1998  ×
   
   $2,157.61
   4% cost of living increase
   $2,243.91 per month

   $2,243.91 × 12 months = $26,926.97

**3.** This evidence was submitted with pretrial motions. Although it is not dispositive of this issue, we find it instructive in assessing the expected impact of requiring Kmart to uncap its disability plan.

3. January 1, 1999– $2,243.91
   December 31, 1999 $\times$ <u>4% cost of living increase</u>
   $2,333.67 per month

   $2,333.67 $\times$ 12 months = $28,004.00

4. January 1, 2000– $2,333.67
   December 31, 2000 $\times$ <u>4% cost of living increase</u>
   $2,427.02 per month

   $2,427.02 $\times$ 12 months = $29,124.20

5. January 1, 2001 $2,427.02
   December 31, 2001 $\times$ <u>4% cost of living increase</u>
   $2,524.10 per month

   $2,524.10 $\times$ 12 months = $30,289.21

6. January 1, 2002– $2,524.10
   December 31, 2002 $\times$ <u>4% cost of living increase</u>
   $2,625.06 pre month

   $2,625.06 $\times$ 12 months = $31,500.77

7. January 1, 2003– $31,500.77 $\times$ 16 years = $504,012.32
   March 10, 2019 $+$ <u>$31,500.77 $\times$ (partial term in 2019)=$6,096.92</u>
   $510,109.24

8. Total benefits $663,218.34 (sum of numbers 1–7 above
   $-$ <u>   8,685.57 (overpayment 1995–1997)</u>
   $654,532.77

*Attorney's Fees*

 Finally, Kmart argues that plaintiff's counsel is not entitled to costs or attorneys' fees because plaintiff did not present evidence of these amounts at trial. We reject this argument. As plaintiff points out, Fed. R.Civ.P. 54(d)(2) allows an attorney to present such issues in a post-trial motion. Plaintiff must file such a claim within thirty (30) days of this Memorandum Opinion and Kmart will have an opportunity to respond to it.

The Court will enter judgment in accordance with these findings in an appropriate order.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.