**Pelletier v. Fleet Financial et al    CV-99-245-B    09/19/00**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Paul A. Pelletier**</u>

         **v.**                              NH Civil No.    99-245-B
                                             ME Civil No.    99-CV-146-PH
                                             Opinion No. 2000 DNH 196
<u>**Fleet Financial Group, Inc. and Unum**</u>
<u>**Life Insurance Company of America**</u>



<u>**MEMORANDUM AND ORDER**</u>

Paul Pelletier became disabled and began collecting benefits under a long-term disability plan offered by his employer, Fleet Financial Group, Inc.  Fleet funded the plan with an insurance policy issued by the Unum Life Insurance Company of America. Unum ultimately terminated Pelletier's benefits after 24 months pursuant to a policy provision limiting the payment of benefits for disability caused by "mental illness" to that period.

After Pelletier lost his disability benefits, he sued both Fleet and Unum alleging that: (1) the long-term disability plan's mental illness limitation violates Titles I and III of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; (2) the limitation discriminates against him in violation of Me. Rev. Stat. Ann., tit. 24-A, § 2159-A; and (3) Unum's application of the limitation to his claim violates his rights under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Unum has moved for summary judgment (doc. no. 16) and Fleet has filed a motion to dismiss for failure to state a claim (doc. no. 17). For the following reasons, I grant both motions.

## I.   BACKGROUND[1]

The insurance policy funding Fleet's long-term disability plan provides that benefits "will be paid for the period of disability if the insured gives to [Unum] proof of continued" disability and regular attendance of a physician.  R. at 366.

---

[1]    Unum and Pelletier have jointly submitted and stipulated to the authenticity and admissibility of the claim file and policy file maintained by Unum in connection with Pelletier's claim for benefits (the "Stipulated File Documents"). I hereinafter cite to the Stipulated File Documents as "R."

The payment of benefits ceases on the earliest of: (1) "the date the insured is no longer disabled;" (2) "the date the insured dies;" (3) "the end of the maximum benefit period;" or (4) "the date the insured's current earnings exceed 80% of his indexed pre-disability earnings." Id. at 363. The policy also includes a "mental illness limitation." This limitation provides that "[b]enefits for disability due to mental illness will not exceed 24 months of monthly benefit payments." Id. at 361. "Mental illness" is defined as "mental, nervous or emotional diseases or disorders of any type." Id.

From December 1994 until June 1995, Pelletier received short-term disability benefits. On May 15, 1995, Unum received Pelletier's application for long-term disability benefits, in which his treating psychiatrist, Dr. Fortier, indicated that Pelletier was disabled because he suffered from Major Depressive Disorder and Opioid Dependence.[2] On June 15, 1995, Unum approved

_____

[2] On December 12, 1994, Pelletier entered a chemical dependency rehabilitation program at St. Mary's Regional Medical Center. He was released from the program on January 13, 1995.

Pelletier's claim for long-term disability benefits, effective June 8, 1995. At the same time, Unum notified Pelletier of its conclusion that his disability fell within the plan's mental illness limitation. Unum explained that pursuant to the terms of the limitation, Pelletier's benefits would cease on June 7, 1997.

On June 6, 1997, Unum notified Pelletier that he had exhausted his twenty-four months of disability payments and explained the procedure to follow to seek review of the decision to terminate his benefits. On February 4, 1999, Pelletier requested that Unum's LTD Quality Review Section review his file and reclassify his disability so that it would not be subject to the mental illness limitation. Unum denied Pelletier's appeal, concluding that "[t]he information within Mr. Pelletier's file indicates that he was paid 24 months of benefits under the [mental illness] limitation due to his diagnosis of Major Depression and Panic Disorder. We have reviewed the recent narrative statement submitted by Dr. Fortier and have determined that the previous termination decision was correct." Id. at 228.

-4-

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. 1993).  A material fact is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  In a case involving construction of contract language, summary judgment is appropriate "only if the meaning of the language is clear," in light of the surrounding circumstances and the undisputed evidence of the parties' intent.  See Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 586 (1st Cir. 1993) (finding plan language ambiguous).

I apply this standard in ruling on Unum's motion for summary judgment.[3]


### III. **DISCUSSION**

Pelletier argues that the mental illness limitation contained in Unum's long-term disability policy violates Titles I and III of the ADA because it treats the mentally disabled and physically disabled differently. Pelletier also claims that the policy is inconsistent with Me. Rev. Stat. Ann. Tit. 24-A § 2159-A for the same reason. Finally, Pelletier asserts that Fleet and

---

[3] Fleet's motion to dismiss is subject to a different standard of review than Unum's motion for summary judgment. See Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997) (describing Rule 12(b)(6) standard). In this case, however, the outcome is the same under either standard. Pelletier and Unum agree that Fleet cannot be held liable based on ERISA, see Pl. Paul Pelletier's Mem. of Law in Opp'n to Def. Fleet's Mot. to Dismiss (doc. no. 19) at 13; Stipulation (doc. no. 20). Further, Pelletier's § 2159-A claim does not apply to Fleet because § 2159-A covers only insurers. Finally, Pelletier's ADA claims fail not because of a lack of evidence, but rather because the ADA does not prevent an insurer from offering disability policies with different coverage periods for mental and physical disabilities.

-6-

Unum violated ERISA by terminating his benefits because his disability was not caused by a "mental illness."

## A.   **The ADA Claims**

The central question presented by Pelletier's ADA claims is whether a long-term disability insurance plan which is open to both disabled and non-disabled employees on the same terms nevertheless violates the ADA if it fails to provide equivalent coverage for mental and physical disabilities.[4]   I join seven circuit courts in concluding that the answer to this question is no.   See, e.g., EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (Title I); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1116 (9th Cir. 2000) (Titles I and III); Kimber v. Thiokol Corp., 196 F.3d 1092, 1101-02 (10th Cir. 1999) (Title I); Lewis v. Kmart Corp., 180 F.3d 166, 170-71 (4th Cir.

---

[4]   I assume for purposes of analysis that: (1) defendants are "covered entities" under Title I of the ADA; (2) Pelletier is a "qualified individual with a disability" under Title I; and (3) defendants are "place[s] of public accommodation" under Title III of the ADA.   See, e.g., Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 16-20 (1st Cir. 1994).

1999), cert. denied, 120 S. Ct. 978 (2000) (Title I); Ford v. Schering-Plough Corp., 145 F.3d 601, 608-10 (3d Cir. 1998), cert. denied, 525 U.S. 1093 (1999) (Title I); Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1019 (6th Cir. 1997), cert. denied, 522 U.S. 1084 (1998) (Title III); EEOC v. CNA Ins. Companies, 96 F.3d 1039, 1044-45 (7th Cir. 1996); cf. McNeil v. Time Ins. Co., 205 F.3d 179, 186-89 (5th Cir. 2000) (health insurance plan caps for AIDS do not violate Title III); Modderno v. King, 82 F.3d 1059, 1060-62 (D.C. Cir. 1996) (cap on health insurance benefits for mental disability does not violate Section 504 of the Rehabilitation Act, 29 U.S.C. §794); but see Boots v. Northwestern Mut. Life Ins. Co., 77 F. Supp. 2d 211, 215-220 (D.N.H. 1999) (limitations on coverage under disability plan for mental disabilities potentially violates both Titles I and III).

In reaching this conclusion, I find particularly persuasive the Second Circuit's recent analysis of the issue in Equal Employment Opportunity Commission v. Staten Island Savings Bank, 207 F.3d 144 (2d Cir. 2000). There, the court held that Staten

Island Savings Bank's long-term disability plan did not violate Title I of the ADA even though it limited disability benefits for "mental or emotional conditions" to two years while providing extended benefits for other types of disabilities. See id. at 152-53. The court reached this conclusion because it determined that: (1) the statutory language at issue in Title I does not clearly prevent an employer from adopting a disability plan that provides reduced benefits for disabilities arising from mental illness, see id. at 149-50; (2) the ADA's legislative history strongly suggests that Congress did not intend to restrict an employer's ability to impose special limitations on disability insurance coverage for disabilities that result from mental illness, see id. at 150; (3) the existence of the ADA's safe harbor provision, 42 U.S.C. § 12201, does not support the view that disability plans cannot contain special limitations on coverage for mental illness, see id. at 150-51; (4) while the Supreme Court's recent decision in Olmstead v. L.C., 527 U.S. 581, 119 S. Ct. 2176, 2186 n. 10 (1999), suggests that the ADA

generally prohibits individualized discrimination based on a particular disability or category of disabilities as well as discrimination between the disabled and the non-disabled, the reasoning underlying <u>Olmstead</u>'s holding does not invalidate the type of disability insurance policy that is at issue in this case, <u>see</u> <u>id.</u> at 151; (5) the EEOC's informal Interim Guidance on Application of the ADA to Health Insurance (June 8, 1993), reprinted in Fair Employment Practices Manual 405:7115 (BNA 2000), is not entitled to interpretative deference in a case such as the one at issue here because it does not cover disability insurance plans and it is in conflict with the EEOC's published "Interpretive Guidance on Title I of the Americans With Disabilities Act," 29 C.F.R. part 1630, App. 1630.5, <u>see</u> <u>id.</u> at 151-52; and (6) Congress enacted the ADA with an awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities" and, accordingly, it is reasonable to presume that

Congress would have spoken more clearly had it intended to prohibit such a well-established practice, see id. at 149.

Because I find the Second Circuit's analysis of the issue persuasive with respect to both Title I and Title III, I reject Pelletier's ADA claims. Both sides in this important debate offer legitimate public policy arguments to support their respective positions. Except in limited circumstances not present here, however, such public policy debates must be resolved by the legislative branch. In this case, the statutory language that governs my analysis, the legislative history that bears on the question and the historical backdrop against which the ADA was enacted, all support the view that Congress did not intend to prevent employers from offering long-term disability plans with special coverage limitations for mental disabilities when it enacted the ADA. Accordingly, I grant both Fleet's motion to dismiss and Unum's motion for summary judgment with respect to Pelletier's ADA claims.

**B.    The Section 2159-A Claim**

Maine Revised Statutes Annotated Title 24-A § 2159-A

provides that

> No insurer authorized to transact business in
> this state may refuse to insure or continue
> to insure, limit the amount, extent or kind
> of coverage available to an individual or
> charge an individual a rate different from
> that normally charged for the same coverage
> solely because the insured or the applicant
> for insurance has a physical or mental
> handicap, as defined in Title 5, Section
> 4553, subsection 7-A, other than blindness or
> partial blindness, unless the basis for that
> action is clearly demonstrated through sound
> actuarial evidence.

Me. Rev. Stat. Ann. Tit. 24-A § 2159-A (West 2000).  Pelletier

invokes this provision in arguing that Maine law bars an insurer

from offering disability insurance policies that provide

different coverage periods for mental and physical disabilities.

The short answer to Pelletier's claim is that it requires a

reading of § 2159-A that the statutory language simply will not

bear.[5]  Section 2159-A requires insurers to provide coverage on the same terms and conditions to disabled and non-disabled persons unless "sound actuarial evidence" exists to justify differential treatment.  The statutory language, however, does not limit the kind of coverage that an insurer can offer.

All of Fleet's employees are eligible for disability benefits under Unum's policy under the same terms and conditions.  Thus, the policy is not inconsistent with the requirements of § 2159-A even though it provides for different coverage periods for physical and mental disabilities.

## C.  **The ERISA Claim**

Pelletier also challenges Unum's termination of his long-term disability benefits under ERISA.[6]  Pelletier's argument

----

[5]  I need not delve into the legislative history of § 2159-A because the statutory language plainly answers the question the case presents.  See Kapler v. Kapler, 755 A.2d 502, 508 (Me. 2000).

[6]    Fleet moved to dismiss Pelletier's ERISA claim on the ground that it was not a proper party to such a claim.  See Mem. in Supp. of Def. Fleet Financial Group, Inc.'s Mot. to Dismiss (doc. no. 17) at 15-17.  In his opposition, Pelletier conceded

proceeds in several steps.  First, he argues that Unum's decision

is subject to *de novo* review because the plan does not grant Unum

discretion to interpret plan terms or determine a claimant's

eligibility for benefits.  Second, he asserts that the term

"mental illness" is ambiguous.  Third, he argues that one

plausible way to construe the term is to limit it to behavioral

conditions with no known organic cause.  Fourth, he asserts that

his disability was not the result of a mental illness under the

proposed definition because the evidence demonstrates that the

conditions that produced his disability have an organic cause.

Finally, he argues that the doctrine of *contra proferentem*

applies and, therefore, the court must adopt his proposed

definition because it is plausible and favors his position.

---

that Unum was the party solely responsible for any liability with
respect to his ERISA claim.  See Pl. Paul Pelletier's Mem. of Law
in Opp'n to Def. Fleet's Mot. to Dismiss (doc. no. 19) at 13.
Unum subsequently stipulated that "should there be a
determination [that] there is liability for payment of benefits
for a disability covered by the policy, Unum is the responsible
party."  Stipulation (doc. no. 20).  Accordingly, I grant Fleet's
motion to dismiss with respect to Pelletier's ERISA claim.

Assuming for purposes of analysis that Pelletier correctly claims that: (1) Unum's decision is subject to *de novo* review; (2) the term "mental illness" is ambiguous in some contexts; and (3) the doctrine of *contra proferentem* applies to insurance policies governed by ERISA, I nevertheless reject Pelletier's ERISA claim because I cannot reasonably construe the term "mental illness" as defined in the Unum policy to apply only to conditions with no known organic cause. [7]

---

[7] Many of the cases holding that the term "mental illness" is ambiguous because it could be construed to apply only to conditions with no known organic cause are distinguishable because they interpreted policies that did not define "mental illness." See, e.g., Phillips v. Lincoln Nat'l Life Ins. Co., 978 F.2d 302, 310-11 (7th Cir. 1992); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 541 (9th Cir. 1990). Moreover, even if these decisions were not distinguishable, I would not follow them because they are unpersuasive. Instead, I agree with the Fifth and Eighth Circuits which have held that the term "mental illness" is unambiguous and is properly applied to disorders typically identified as "mental," irrespective of their causes. See Tolson v. Avondale Indus., Inc., 141 F.3d 604, 609-10 (5th Cir. 1998); Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 791 (8th Cir. 1998).

This reasoning is in accord with the First Circuit's admonition that language in an ERISA-regulated insurance policy or plan be given a meaning that comports with the interpretation

The mental health limitation evidences Unum's underwriting determination to offer a policy under which beneficiaries who become disabled as a result of mental illness are eligible to receive benefits for a shorter period than beneficiaries who become disabled for other reasons.  This underwriting decision would be rendered meaningless if the term "mental illness" were

---

given by the average person.  See Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1084 (1st Cir. 1990); Burnham v. Guardian Life Ins. Co. of Am., 873 F.2d 486, 489-91 (1st Cir. 1989).  "Mental illness" is defined broadly by the policy at issue here, and therefore the average person would interpret it broadly as well.  See id.; but see Dorsk v. Unum Life Ins. Companies of Am., 8 F. Supp. 2d 19, 21-22 (D. Me. 1998).

Pelletier cites Dorsk, 8 F. Supp. 2d 19, to support the contrary view.  I find Dorsk unpersuasive for two reasons. First, the court did not give appropriate weight to the policy's definition of "mental illness."  See id. at 21-22, 22 n.3. Second, the court chose not to rely on a layperson's interpretation of the term "mental illness" but instead focused on "the need for medical expertise" in determining whether an illness constitutes a mental illness.  See id. at 21 n.3.  This approach is at odds with the First Circuit's guidance on this issue.  See Wickman, 908 F.2d at 1084 ("terms must be given their plain meanings, meanings which comport with the interpretations given by the average person") (emphasis added).

-16-

to be read so narrowly as to exclude every mental disorder that may be deemed to have an organic cause. See Lynd v. Reliance Standard Life Ins. Co., 94 F.3d 979, 984 (5th Cir. 1996). This is especially true if, as Pelletier suggests, the concept of organic cause were construed to include all conditions that result even in part from hereditary and neurobiological factors.[8]

---

[8] According to Dr. Fortier, the causes of Pelletier's conditions, major depressive disorder and panic disorder, include "hereditary, neurobiological factors as well as psychosocial factors." R. at 180. Dr. Fortier noted that "[i]mbalance[s] in neurotransmitter systems have been implicated in the pathophysiology" of both major depressive disorder and panic disorder. Id. Moreover, he observed that "studies indicate a genetic contribution to the development of panic disorder. Major depressive disorder co-exists frequently (50-65%) in individuals with [p]anic [d]isorder." Id. Aside from pointing to Dr. Fortier's opinion, which is based on general data, Pelletier has not presented any evidence indicating that his conditions actually have an organic or physical cause. The absence of test results or similar evidence further undermines the reasonableness of adopting Pelletier's interpretation of the term "mental illness" in this case. See Blake v. Unionmutual Stock Life Ins. Co. of Am., 906 F.2d 1525, 1530 (11th Cir. 1990) (finding plaintiff suffered from a mental, not physical, disorder because she failed to present evidence of "an organic causation for [her] illness," postpartum psychosis).

-17-

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I grant Fleet's motion to dismiss (doc. no. 17) and Unum's motion for summary judgment (doc. no. 16).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 19, 2000

cc:  Patricia Peard, Esq.
     Andrew Pickett, Esq.
     Richard  O'Meara, Esq.
     Charles March, Esq.