Morrill v. Lorillard Tobacco          CV-00-214-B    12/7/00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Michelle Morrill**

    v.                                        Civil No. 00-214-B
                                                  Opinion NO. 2000DNH258
**Lorillard Tobacco Company
and Loews Corporation**



## MEMORANDUM AND ORDER


Michelle Morrill brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, against Lorillard Tobacco Company, her former employer, and Loews Corporation, the administrator of the Loews Corporation Comprehensive Health Care Plan (the "Plan"). Morrill argues that the Plan, by providing less coverage for outpatient psychotherapy than it does for other forms of outpatient treatment, violates Title I of the ADA because it discriminates against the mentally disabled. I have before me motions by Lorillard (Doc. No. 6) and Loews (Doc. No. 13) to dismiss all claims against them pursuant

to Federal Rule of Civil Procedure 12(b)(6).

## I.  <u>BACKGROUND</u>[1]

Morrill worked for Lorillard for eleven years.  She was responsible for marketing Lorillard's products in New Hampshire.

Morrill suffers from post-traumatic stress disorder, dissociative disorder, and major depression.  Although the complaint is unclear as to when Morrill first began to suffer from these mental disorders, she has received outpatient psychotherapy, in addition to psychopharmological medication, to treat them since 1995.

Lorillard provided Morrill with health insurance through a health benefit plan administered by Lowes.  The Plan limits coverage of outpatient psychotherapy visits for mental or nervous disorders.  Prior to 1998, the Plan paid a maximum of $1,000 per calendar year for outpatient psychotherapy and a maximum of $40

---

[1]  The background facts set forth in this memorandum and order are taken from Morrill's complaint, (Doc. No. 1).

per visit.  On January 1, 1998, the Plan eliminated the annual and per visit dollar limits and replaced them with a limit of twenty visits per year.  The Plan requires participants to pay a co-payment of 50% for each outpatient psychotherapy visit.  All other types of outpatient visits require only a 15% co-payment, except for chiropractic visits which require a 20% co-payment.  Under the Plan, a participant may apply all unreimbursed charges for every covered service, except outpatient psychotherapy, towards meeting the Plan deductible.  In addition, unreimbursed expenses for outpatient psychotherapy do not count towards the annual out-of-pocket limit, which is the maximum annual amount an individual could be required to pay under the Plan.

Morrill visited her psychotherapist more than twenty times in both 1998 and 1999.[2]  In accordance with the terms of the Plan: (1) the defendants refused to pay for any visit in excess

---

[2]  Morrill also alleges that she visited her psychotherapist more than 20 times in 1997.  She has not stated, however, whether she exceeded the $1,000 maximum for psychotherapy visits that was in effect in 1997.

of the twenty-visit maximum; (2) the defendants only paid 50% of the bill for the twenty visits covered by the Plan; and (3) Morrill was unable to apply her co-payments for these visits to her deductible or her out-of-pocket limit.

Morrill filed a charge of discrimination with the Equal Employment Opportunity Commission and received a "right to sue" letter on January 31, 2000. This action followed.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to accept the complaint's well-pleaded facts as true and to draw all reasonable inferences in favor of the plaintiff. See Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997); Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). I may dismiss the complaint only if, when viewed in this manner, it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st

Cir. 1988) (internal citation omitted).

The threshold for stating a claim under the federal rules "may be low, but it is real." Id. While I must construe all well-pleaded facts in the plaintiff's favor, I need not accept a plaintiff's "unsupported conclusions or interpretations of law." Washington Legal Found., 993 F.2d at 971.

I apply this standard in reviewing the defendants' motions to dismiss.

### III. DISCUSSION

Morrill argues that, by failing to provide the same coverage for outpatient psychotherapy that it provides for other forms of outpatient treatment, the Plan discriminates against the mentally disabled in violation of Title I of the ADA. Lorillard and Loews argue that it is not discriminatory under the ADA for a health insurance plan to offer different types of coverage for mental and physical conditions.[3] This is not an entirely new issue for

---

[3] Lorillard and Loews raise a number of additional arguments in support of their respective motions to dismiss. I need not address these arguments since I conclude that Morrill fails to state a claim as a matter of law.

the court.

On September 19, 2000, I issued a Memorandum and Order in the case of Pelletier v. Fleet Financial Group, 2000 DNH 196 (D.N.H. Sept. 19, 2000), in which I held that a long-term disability insurance plan that is open to both disabled and non-disabled employees on the same terms does not violate Title I of the ADA simply because it fails to provide equivalent coverage for mental and physical disabilities. Id. at 7. My holding in Pelletier is in accord with the rulings of seven circuit courts of appeal. See id. at 7 (collecting cases).

In Pelletier, I adopted the Second Circuit's analysis of the issue in EEOC v. Staten Island Savings Bank, 207 F.3d 144 (2d Cir. 2000). As I noted in Pelletier, the court determined in Staten Island Savings Bank that an employer's long-term disability plan did not violate Title I of the ADA even though it provided different benefits for mental and physical disabilities because:

(1) the statutory language at issue in Title I does not clearly prevent an employer from adopting a disability plan that provides reduced benefits for disabilities arising from mental illness, see id. at 149-50; (2) the ADA's legislative history strongly suggests that Congress did not intend to restrict an employer's ability to impose special limitations on disability insurance coverage for disabilities that result from mental illness, see id. at 150; (3) the existence of the ADA's safe harbor provision, 42 U.S.C. § 12201, does not support the view that disability plans cannot contain special limitations on coverage for mental illness, see id. at 150-51; (4) while the Supreme Court's recent decision in Olmstead v. L.C., 527 U.S. 581, 119 S. Ct. 2176, 2186 n. 10 (1999), suggests that the ADA generally prohibits individualized discrimination based on a particular disability or category of disabilities as well as discrimination between the disabled and the non-disabled, the reasoning underlying Olmstead's holding does not invalidate the type of disability insurance policy that is at issue in this case, see id. at 151; (5) the EEOC's informal Interim Guidance on Application of the ADA to Health Insurance (June 8, 1993), reprinted in Fair Employment Practices Manual 405:7115 (BNA 2000), is not entitled to interpretative deference in a case such as the one at issue here because it does not cover disability insurance plans and it is in conflict with the EEOC's published "Interpretive Guidance on Title I of the Americans With Disabilities Act," 29 C.F.R. part 1630, App. 1630.5, see id. at 151-52; and (6) Congress enacted the ADA with an awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities" and, accordingly, it is reasonable to

> presume that Congress would have spoken more clearly
> had it intended to prohibit such a well-established
> practice, <u>see</u> <u>id.</u> at 149.

<u>Pelletier</u>, 2000 DNH 196 at 9-11.

Morrill has failed to persuasively argue that a different analysis is required for ADA challenges to health insurance plans. <u>See</u> <u>Saks v. Franklin Covey Co.</u>, 117 F. Supp. 2d 318, 326-27 (S.D.N.Y. 2000) (applying <u>Staten Island Savings Bank</u> to health insurance plan). Accordingly, I apply <u>Pelletier</u> here and determine that neither Loews nor Lorillard can be held liable for violating the ADA solely because they sponsored, established, or administered a health insurance plan that provides less favorable coverage for out-patient psychotherapy than it does for other forms of out-patient treatment.

## IV. <u>CONCLUSION</u>

Because Morrill fails to state an ADA claim against the defendants, I grant both Lorillard's motion to dismiss, (Doc. No.

6), and Loews' motion to dismiss, (Doc. No. 13).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 7, 2000

cc:  Sheila Zakre, Esq.
     Jeffrey S. Brody, Esq.
     Elise M. Bloom, Esq.