Witham v. Brigham & Women's, et al.     CV-00-268-M  05/31/01
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Raelene Witham,
      Plaintiff

      v.                                  Civil No. 00-268-M
                                          Opinion No. 2001 DNH 102
Brigham & Women's Hospital, Inc.
and Liberty Mutual Insurance Co.,
      Defendants


                            **O R D E R**


      Raelene Witham brings this suit against her former employer,

Brigham & Women's Hospital ("BWH"), and the administrator of

BWH's long-term disability insurance plan, Liberty Life Assurance

Company of Boston ("Liberty"), seeking damages for alleged

violations of the Americans with Disabilities Act ("ADA").[1]

Witham claims that because the plan provides substantially

greater benefits to participants who are disabled by reason of a

physical disability than to participants (like Witham) who are

disabled by reason of a mental disability, it unlawfully

discriminates against those with mental impairments or handicaps.

Defendants move to dismiss Witham's complaint, saying the

_____

      [1]    Witham's complaint apparently misidentifies Liberty as
"Liberty Mutual Insurance Company."

provisions of the plan with which she takes issue do not, as a matter of law, violate the ADA and, therefore, she has failed to assert a viable cause of action.

## Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983). See also The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 15 (1st Cir. 1989). "[D]ismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Roeder v. Alpha Industries, Inc., 814 F.2d 22, 25 (1st Cir. 1987)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

2

## Background

BWH is a non-profit hospital operating in Boston, Massachusetts. It offers a self-insured long-term disability plan to all employees who work in excess of an established minimum number of hours each week. Eligible employees may also, if they so choose, supplement the coverage provided by the plan with private insurance. Generally speaking, and subject to certain limitations, for those participants who are permanently disabled by reason of a physical injury or illness, the plan may provide benefits until the participant reaches age 70. Consistent with what appears to be a fairly common practice, however, the plan provides benefits for a maximum of 24 months to those participants who are disabled by reason of an emotional disease or disorder.

Witham began working at BWH in 1990 and elected to participate in the plan. In 1996, she was diagnosed with Anorexia Nervosa with secondary Bulimia. As a result of her illness, Witham became totally disabled. In the Spring of 1997, after apparently exhausting her short-term disability benefits, Witham applied for, and began receiving, long-term disability

3

benefits. Liberty's predecessor, acting as the plan's administrator, notified Witham that her application for long-term disability benefits had been approved but, because her disability was due to a mental or emotional disease or disorder, she was eligible for not more than 24 months of benefits. Witham does not deny that her illness constitutes a "mental or emotional disease or disorder," as that phrase is used in the plan. In January of 1999, after Liberty assumed the role of plan administrator, it contacted Witham and reminded her of the 24 month cap on her long-term disability benefits. In March of 1999, that period expired and Witham's benefits stopped.

Persuaded that her benefits had been terminated unlawfully, Witham filed a claim with the EEOC, received a "right to sue letter," and filed this suit. In it, she alleges that because the plan provides disparate benefits to physically disabled participants, on the one hand, and mentally disabled participants, on the other, it violates various provisions of the ADA.

## Discussion

### I.   Titles I and III of the ADA.

In count 1 of her complaint, Witham alleges that BWH violated Title I of the ADA by providing her "with long term disability insurance which afforded her inferior coverage as a mentally disabled individual, as compared with the coverage provided employees with physical disabilities."  Complaint at para. 18.  Title I of the ADA provides, in pertinent part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

As to Liberty, Witham alleges that its "decision to subject Ms. Witham as a mentally disabled individual to treatment inferior to that accorded other insureds under the Policy constitutes discrimination on the basis of disability in violation of Title III of the ADA."  Complaint, at para. 20.

5

Title III of the ADA, which addresses discrimination by "public accommodations" provides, in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Interpreting the scope of Title III, the Court of Appeals for the First Circuit has held that public accommodations are not limited to actual physical structures and "the discriminatory denial of benefits under a health care plan might, in some circumstances, state a claim under Title III of the ADA." Tompkins v. United Healthcare of N.E., Inc., 203 F.3d 90, 95 n.4 (1st Cir. 2000) (citing Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n., Inc., 37 F.3d 12, 19-20 (1st Cir. 1994)).


II.  The ADA and BWH's Long-Term Disability Plan.

For purposes of this order, the court will assume that: (1) Witham filed suit in a timely fashion (a point with which BWH takes issue, at least as to her Title I claim); (2) BWH is a "covered entity" under Title I of the ADA, (3) Witham is a

"qualified individual with a disability" under Title I (another point disputed by BWH); and, (4) although it did not issue any insurance policies relative to the plan (which is self-funded by BWH), Liberty is potentially subject to liability under Title III of the ADA (a point Liberty challenges in its motion).

This court (Barbadoro, C.J.) recently considered and rejected a claim, like Witham's, that a long-term disability plan violates Titles I and III of the ADA if it provides different levels of coverage for physically and mentally disabled participants.

> The central question presented by [plaintiff's] ADA claims is whether a long-term disability insurance plan which is open to both disabled and non-disabled employees on the same terms nevertheless violates the ADA if it fails to provide equivalent coverage for mental and physical disabilities. I join seven circuit courts in concluding that the answer to this question is no.

Pelletier v. Fleet Financial Group, Inc., 2000 DNH 196, 7 (D.N.H. Sept. 19, 2000) (footnote omitted) (citing EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (Title I); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1116 (9th Cir. 2000) (Titles I and III); Kimber v. Thiokol Corp., 196 F.3d 1092,

7

1101-02 (10th Cir. 1999) (Title I); <u>Lewis v. Kmart Corp.</u>, 180

F.3d 166, 170-71 (4th Cir. 1999) (Title I), <u>cert. denied</u>, 528

U.S. 1136 (2000); <u>Ford v. Schering-Plough Corp.</u>, 145 F.3d 601,

608-10 (3d Cir. 1998) (Title I), <u>cert. denied</u>, 525 U.S. 1093

(1999); <u>Parker v. Metropolitan Life Ins. Co.</u>, 121 F.3d 1006, 1019

(6th Cir. 1997) (Title III), <u>cert. denied</u>, 522 U.S. 1084 (1998);

<u>EEOC v. CNA Ins. Companies</u>, 96 F.3d 1039, 1044-45 (7th Cir. 1996)

(Title I)).  <u>But see</u> <u>Boots v. Northwestern Mutual Life Ins. Co.</u>,

77 F. Supp. 2d 211 (D.N.H. 1999) (Muirhead, M.J.) (concluding

that providing disparate long-term disability benefits to

physically and mentally disabled insureds may violate the ADA).

In reaching the conclusion that the plan at issue did not

violate the ADA, Chief Judge Barbadoro relied heavily upon the

recent decision of the Second Circuit Court of Appeals in <u>EEOC v.</u>

<u>Staten Island Savings Bank</u>, <u>supra</u>.

> There, the court held that Staten Island Savings Bank's
> long-term disability plan did not violate Title I of
> the ADA even though it limited disability benefits for
> "mental or emotional conditions" to two years while
> providing extended benefits for other types of
> disabilities.  <u>See</u> <u>id.</u> at 152-53.  The court reached
> this conclusion because it determined that: (1) the
> statutory language at issue in Title I does not clearly
> prevent an employer from adopting a disability plan

8

that provides reduced benefits for disabilities arising from mental illness, see id. at 149-50; (2) the ADA's legislative history strongly suggests that Congress did not intend to restrict an employer's ability to impose special limitations on disability insurance coverage for disabilities that result from mental illness, see id. at 150; (3) the existence of the ADA's safe harbor provision, 42 U.S.C. § 12201, does not support the view that disability plans cannot contain special limitations on coverage for mental illness, see id. at 150-51; (4) while the Supreme Court's recent decision in Olmstead v. L.C., 119 S. Ct. 2176, 2186 n. 10 (1999), suggests that the ADA generally prohibits individualized discrimination based on a particular disability or category of disabilities as well as discrimination between the disabled and the non-disabled, the reasoning underlying Olmstead's holding does not invalidate the type of disability insurance policy that is at issue in this case, see id. at 151; (5) the EEOC's informal Interim Guidance on Application of the ADA to Health Insurance (June 8, 1993), reprinted in Fair Employment Practices Manual 405:7115 (BNA 2000), is not entitled to interpretative deference in a case such as the one at issue here because it does not cover disability insurance plans and it is in conflict with the EEOC's published "Interpretive Guidance on Title I of the Americans With Disabilities Act," 29 C.F.R. part 1630, App. 1630.5, see id. at 151-52; and (6) Congress enacted the ADA with an awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities" and, accordingly, it is reasonable to presume that Congress would have spoken more clearly had it intended to prohibit such a well-established practice, see id. at 149.

Pelletier, 2000 DNH 196, 8-10. Consequently, the Chief Judge concluded that, "the statutory language that governs my analysis, the legislative history that bears on the question, and the

9

historical backdrop against which the ADA was enacted, all support the view that Congress did not intend to prevent employers from offering long-term disability plans with special coverage limitations for mental disabilities when it enacted the ADA." Id. at 11. In light of that conclusion, defendants' motions for summary judgment as to plaintiff's claims under both Title I and Title III of the ADA were of course granted.

This court agrees with the analysis of the Chief Judge, the Second Circuit Court of Appeals, and each of the other courts of appeals that has addressed this issue, all of which have uniformly concluded that the ADA is not violated when, as is the case here, an employer offers its employees equal access to a long-term disability insurance plan that provides different levels of benefits for physical and mental disabilities.

**Conclusion**

In light of the foregoing, plaintiff's complaint fails to state a viable cause of action under either Title I or Title III of the ADA. Accordingly, defendants' motion to dismiss (document

10

no. 8) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 31, 2001

cc:  Benjamin T. King, Esq.
     William D. Pandolph, Esq.