Filed: June 29, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-2179
(CA-97-1230-A)

Harold Lewis,

Plaintiff - Appellee,

versus

Kmart Corporation,

Defendant - Appellant.

O R D E R

The court amends its opinion filed June 16, 1999, as follows:

On page 2, section 5, line 4 -- counsel's name is corrected to read "Jodi Beth Danis."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HAROLD LEWIS,
<u>Plaintiff-Appellee,</u>

v.

KMART CORPORATION,
<u>Defendant-Appellant,</u>

and

AETNA INSURANCE COMPANY; AETNA
LIFE INSURANCE COMPANY,
<u>Defendants.</u>

NATIONAL RETAIL FEDERATION;
CHAMBER OF COMMERCE; EQUAL
EMPLOYMENT ADVISORY COUNCIL;
AMERICAN COUNCIL OF LIFE

INSURANCE; THE HEALTH INSURANCE
ASSOCIATION OF AMERICA; THE
NATIONAL ALLIANCE FOR THE
MENTALLY ILL; EMPLOYMENT LAW
CENTER; AMERICAN PSYCHIATRIC
ASSOCIATION; DISABILITY RIGHTS
ADVOCATES; DISABILITY RIGHTS
EDUCATION AND DEFENSE FUND;
NATIONAL ASSOCIATION OF
PROTECTION AND ADVOCACY SYSTEMS;
NATIONAL DEPRESSIVE AND MANIC
DEPRESSIVE ASSOCIATION; WORLD
INSTITUTE OF DISABILITY; EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,
<u>Amici Curiae.</u>

No. 98-2179

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-1230-A)

Argued: March 2, 1999

Decided: June 16, 1999

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Hamilton wrote
the opinion, in which Judge Wilkins and Judge Niemeyer joined.

_____

## COUNSEL

**ARGUED:** John Charles Fox, FENWICK & WEST, L.L.P., Palo
Alto, California, for Appellant. Jeanne Goldberg, VICTOR M.
GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellee.
Jodi Beth Danis, Office of General Counsel, EQUAL EMPLOY-
MENT OPPORTUNITY COMMISSION, Washington, D.C., for
Amicus Curiae EEOC. **ON BRIEF:** Victor M. Glasberg, VICTOR
M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appel-
lee. C. Gregory Stewart, General Counsel, Philip B. Sklover, Asso-
ciate General Counsel, Vincent J. Blackwood, Assistant General
Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMIS-
SION, Washington, D.C., for Amicus Curiae EEOC. Robert P. Joy,
Robert P. Morris, MORGAN, BROWN & JOY, L.L.P., Boston, Mas-
sachusetts, for Amicus Curiae National Retail Federation. Ann Eliza-
beth Reesman, Corrie L. Fischel, MCGUINESS & WILLIAMS,
Washington, D.C.; Stephen A. Bokat, Robin S. Conrad, Sussan
Mahallati Kysela, NATIONAL CHAMBER LITIGATION CENTER,
INC., Washington, D.C., for Amici Curiae Chamber of Commerce, et
al. Phillip E. Stano, Terri Sorota, AMERICAN COUNSEL OF LIFE
INSURANCE, Washington, D.C.; Jeffrey L. Gabardi, HEALTH
INSURANCE ASSOCIATION OF AMERICA, Washington, D.C.;

2

Gregory G. Katsas, Cinton R. Pinyan, JONES, DAY, REAVIS & POGUE, Washington, D.C., for Amici Curiae ACLI, et al. Ronald S. Honberg, NATIONAL ALLIANCE FOR THE MENTALLY ILL, Arlington, Virginia; Claudia Center, THE EMPLOYMENT LAW CENTER, San Francisco, California, for Amici Curiae National Alliance, et al.

_____

**OPINION**

HAMILTON, Circuit Judge:

In Rogers v. DHEC, No. 97-2780, 1999 WL 193895 (4th Cir. April 8, 1999), we held that Title II, § 202 of the Americans With Disabilities Act of 1990 (the ADA), 42 U.S.C. § 12132, does not require a long-term disability plan that is sponsored by a public entity to provide the same level of benefits for mental and physical disabilities. In the present appeal, this court is called upon to decide whether the same holds true under Title I, § 102(a) of the ADA, 42 U.S.C. § 12112(a), when the plan's sponsor is a private employer. We hold it does.

I.

In 1984, Kmart Corporation (Kmart) hired Harold Lewis (Lewis) as a management trainee. Over the course of the next eleven years, Lewis held various management positions at numerous Kmart stores in Pennsylvania and Virginia. Lewis had suffered from bouts of severe depression since 1979. However, by March 13, 1995, Lewis' condition had worsened such that he took a leave of absence from his position as the store manager of the Kmart store in Front Royal, Virginia.

Beginning in 1976, Kmart offered a long-term disability plan on an optional basis to its managerial employees with the full costs of the plan to be paid by the employees who elected to participate. At the time Lewis took disability leave on March 13, 1995, the long-term disability plan in place was known as the 1993 Long Term Disability Plan (the 1993 LTD Plan).[1] The 1993 LTD Plan capped disability

_____

[1] Kmart had contracted with Aetna Life Insurance Company (Aetna) to provide the insurance policy underlying the 1993 LTD Plan.

3

benefits for mental disabilities at two years, but only capped disability benefits for physical disabilities upon a participant turning age sixty-five. Lewis elected to participate in the 1993 LTD Plan.

While Lewis was on disability leave, he applied for disability benefits under the 1993 LTD Plan. Lewis began receiving such benefits on September 19, 1995, but learned by the spring of 1996 that Aetna had classified his condition as mental in nature, and therefore, his disability benefits would cease on September 18, 1997.

On July 2, 1996, more than a year before the termination of his benefits, Lewis filed a charge of disability discrimination against Kmart with the Equal Employment Opportunity Commission (EEOC). The charge alleged that Lewis had been subjected to discrimination on the basis of his mental disability, because he was given less disability insurance coverage than a person with a physical disability. After receiving a right to sue letter from the EEOC, Lewis filed the present action on August 6, 1997, alleging that Kmart violated his rights under Title I, § 102(a) of the ADA to be free from discrimination on account of his disability in the terms and conditions of his employment.**2**

Following discovery and the district court's denial of two summary judgment motions made by Kmart, the district court conducted a bench trial on April 13, 1998. On June 11, 1998, the district court entered judgment in favor of Lewis, providing him with the following relief: (1) a declaration that the two-year cap on disability benefits for employees disabled by mental illness violates Title I, § 102(a) of the ADA; and (2) a permanent injunction mandating the continued payment of monthly benefits according to the terms presented by Kmart in its post-trial memorandum regarding damages, so long as Lewis remains disabled within the meaning of the 1993 LTD Plan, and until he reaches age sixty-five. The district court also issued an accompanying memorandum opinion. See Lewis v. Kmart, 7 F. Supp.2d 743 (E.D.Va. 1998).

_____

**2** Lewis also brought an ADA claim against Aetna, but the district court granted summary judgment in favor of Aetna on the ground that the statute of limitations had run on the claim. See Lewis v. Kmart, 993 F. Supp. 382, 387 (E.D.Va. 1998). This claim is not at issue in the present appeal.

4

Kmart noted a timely appeal.

II.

Title I, § 102(a) of the ADA provides:

> No [employer] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a); see also 42 U.S.C. § 12111(2). Title I, § 102(b) of the ADA, entitled "Construction," provides, in relevant part:

> As used in subsection (a) of this section, the term"discriminate" includes--
>
> * * *
>
> (2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs) . . . .

42 U.S.C. § 12112(b)(2).

Kmart argues, inter alia, that the district court erred as a matter of law in ruling that the 1993 LTD Plan's provision of less long-term disability benefits for a mental disability than for a physical disability violates Title I, § 102(a) of the ADA. Thus, the issue before this court is whether Title I, § 102(a) of the ADA requires a long-term disability plan that is sponsored by a private employer to provide the same level

5

of benefits for mental and physical disabilities. This is a question of statutory interpretation, which we review de novo. See Shafer v. Preston Mem'l Hosp., 107 F.3d 274, 277 (4th Cir. 1997).

In Rogers, we resolved this question in the context of Title II, § 202 of the ADA, which applies to public entities.**3** See 1999 WL 193895, at *1. In relevant part, Title II, § 202 of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.§ 12132.

The plaintiff-appellant in Rogers, Major Rogers (Rogers), was employed by the South Carolina Department of Health and Environmental Control (the State) as a maintenance engineer for twenty-two years. See 1999 WL 193895, at *1. The State sponsored a long-term disability plan for employees such as Rogers (the State LTD Plan), which provided one year of benefits for mental disabilities and benefits to age sixty-five for physical disabilities. See id. After being diagnosed with a panic-anxiety disorder, Rogers applied for long-term benefits under the State LTD Plan based on a psychological disability. See id.

When Rogers' long-term disability benefits ended after one year, he sued the State and the administrator of the State LTD Plan on the basis that the State LTD Plan discriminated against him in violation of Title II, § 202 of the ADA. See id. Of relevance in the present appeal, like Lewis, Rogers alleged that he was illegally discriminated against because he was denied the same level of long-term disability benefits as a plan participant with a physical disability. See id. The district court dismissed the case, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, "holding that a disparity in benefits between physical and mental disabilities in a benefit plan is not unlawful discrimination under [Title II, § 202 of] the ADA." See id.

_____

**3** We issued our decision in Rogers after oral argument in the present appeal.

6

On appeal, we recognized that the State satisfied the first part of Title II, § 202 of the ADA, which prohibits a qualified individual with a disability from being "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity," 42 U.S.C. § 12132, because Rogers was not excluded from participating in, nor denied the benefits of, the State LTD Plan. See Rogers, 1999 WL 193895, at *2. The broad question, we stated, however, was "whether the `subjected to discrimination' phrase in [Title II, § 202] was intended to require equal benefits for mental and physical disabilities." Id. While recognizing that the plain language of the ADA does not answer this question, we emphasized that Supreme Court jurisprudence regarding a sister act of the ADA, the Rehabilitation Act, 29 U.S.C. §§ 701-796l, the ADA's "safe harbor" provision, 42 U.S.C. § 12201(c), and the related legislative history, a public policy statement of the EEOC, the applicability of another provision of the ADA, and post-ADA congressional activity gave us guidance on the issue. See Rogers, 1999 WL 193895, at *2. After examining each of these sources, we stated that "[e]verything that we have considered--from pre-ADA Supreme Court cases on the Rehabilitation Act to post-ADA congressional activity--leads us to one conclusion: the ADA does not require South Carolina to provide the same level of benefits for mental and physical disabilities in its long-term disability plan for state employees." Id. at *4. We also recognized that our holding was consistent with recent opinions from the Third, Sixth, and Seventh Circuits. Id. at *1 (citing Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3d Cir. 1998), cert. denied, 119 S. Ct. 850 (1999); Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1015 (6th Cir. 1997) (en banc), cert. denied, 118 S. Ct. 871 (1998); EEOC v. CNA Ins. Co., 96 F.3d 1039, 1044 (7th Cir. 1996)).

For purposes of the issue presented in the present appeal, no material distinction exists between Title I, § 102(a) of the ADA and Title II, § 202 of the ADA. Indeed, for purposes of the issue presented in the present appeal, the only difference between these two sections is the nature of the employing entity, which is a distinction without a difference. Certainly Congress did not intend for an employer's liability for illegal discrimination under the ADA to turn on the private versus public nature of the employing entity.

Because no material distinction exists between Title I, § 102(a) of the ADA and Title II, § 202 of the ADA for purposes of the issue

7

before us in the present appeal, our reasoning in <u>Rogers</u>, <u>see id.</u> at 1999 WL 193895, at *2-5, equally applies to resolve that issue. We, accordingly, adopt our reasoning in <u>Rogers</u> and hold that Title I, § 102(a) of the ADA does not require a long-term disability plan that is sponsored by a private employer to provide the same level of benefits for mental and physical disabilities.

Finally, we note that our holding that Title I,§ 102(a) of the ADA does not require a long-term disability plan that is sponsored by a private employer to provide the same level of benefits for mental and physical disabilities is consistent with the Supreme Court decision principally relied upon by Lewis: <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308 (1996). In <u>O'Connor</u>, the defendant-employer claimed the plaintiff-employee could not establish a <u>prima facie</u> case under the Age Discrimination in Employment Act (ADEA), <u>see</u> 29 U.S.C. §§ 621-634, because he had been replaced by someone who was also in the protected class, <u>i.e.</u>, someone over the age of forty. In rejecting that argument, the Court explained that the ADEA:

> does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out <u>because of his age</u>.

<u>O'Connor</u>, 517 U.S. at 312.

According to Lewis, <u>O'Connor</u> requires us to read Title I, § 102(a) of the ADA to prohibit an employer from sponsoring a long-term disability plan that provides less benefits to one category of disabled persons than another category of disabled persons. More specifically, Lewis argues that, inasmuch as he received disability benefits for a shorter period of time because his disability was a mental disability, he "has lost out because" of his disability and, therefore, under <u>O'Connor</u>, he has a viable claim under Title I, § 102(a) of the ADA.

In addressing Lewis' argument, we initially note that the Supreme Court has never held that it is unlawful under the ADA or the Reha-

8

bilitation Act to give preferential treatment to one disability over another. In fact, in Traynor v. Turnage, 485 U.S. 535 (1988), the Supreme Court upheld under § 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), the extension of educational benefits to one class of disabled persons and not to others. Id. at 552. According to the Court, the preferential treatment of one disability over another was permissible under § 504(a) of the Rehabilitation Act because "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." Id. at 549. In reaching this holding, the Court emphasized that "the central purpose of § 504 . . . is to assure that handicapped individuals receive `evenhanded treatment' in relation to nonhandicapped individuals," id. at 548.

We conclude O'Connor is of no help to Lewis. First, there is no meaningful way to distinguish Traynor from this case. Section 504(a) of the Rehabilitation Act provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Id. The sister provision of § 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), is Title I, § 102(a) of the ADA. We may presume Congress was aware of the Supreme Court's interpretation of § 504(a) of the Rehabilitation Act when it passed the ADA in 1990 and included antidiscrimination language in Title I, § 102(a) that parallels § 504(a) of the Rehabilitation Act. See Cannon v. University of Chicago, 441 U.S. 677, 696-97 (1979). Cf. Rogers, 1999 WL 193895, *3 ("We may presume that Congress was aware of the Supreme Court's interpretation of § 504 of the Rehabilitation Act when it (Congress) passed the ADA in 1990 and included antidiscrimination language in § 12132 that parallels § 504 of the Rehabilitation Act.").

Second, reliance on O'Connor simply does not make intuitive sense. As recognized in Traynor, our federal disability statutes ensure

9

that disabled persons are treated evenly in relation to nondisabled persons. See 485 U.S. at 548. Thus, our federal disability statutes are not designed to ensure that persons with one type of disability are treated the same as persons with another type of disability. In contrast, the ADEA, which was at issue in O'Connor, ensures that all persons over the age of forty are treated evenly on account of their age in relation to all other persons, not just those persons under the age of forty. Therefore, the ADA and the Rehabilitation Act permit preferential treatment between disabilities, but the ADEA does not permit preferential treatment to any person at the expense of any other person over the age of forty on account of age.[4]

III.

In conclusion, we hold that Title I, § 102(a) of the ADA does not require a long-term disability plan that is sponsored by a private employer to provide the same level of benefits for mental and physical disabilities. Accordingly, we vacate the district court's memorandum opinion filed on June 11, 1998, its final judgment in favor of Lewis, and remand with instructions to enter judgment in favor of Kmart.

VACATED AND REMANDED

_____

[4] Kmart alleges the district court committed several other errors alternatively entitling it to relief. Given the dispositive nature of our holding with respect to Kmart's appeal, we need not and do not address these other alleged errors.

10