Gloria L. KOLTON, Appellant,

v.

COUNTY OF ANOKA, defendant and third-party plaintiff, Respondent,

v.

Allan T. Roth, individually and d/b/a A.T. Group, Sun Life Assurance Company of Canada, Respondents.

No. C1–00–2179.

Court of Appeals of Minnesota.

June 26, 2001.

Wayne J. Rice, the Law Office of Wayne J. Rice, P.A., Minneapolis, for appellant.

Robert M.A. Johnson, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, for respondent Anoka County.

Frederick E. Finch, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent Roth.

James F. Roegge, Meagher & Geer, P.L.L.P., Minneapolis; and Mark E. Schmidtke, Hoeppner, Wagner & Evans, L.L.P., Valparaiso, IN, for respondent Sun Life.

Considered and decided by STONEBURNER, P.J., SCHUMACHER and PORITSKY,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SCHUMACHER, Judge.

Appellant Gloria L. Kolton challenges adverse summary judgment, arguing that the district court erred in ruling she did not establish Minnesota Human Rights Act (MHRA) and equal protection claims as a matter of law. We affirm summary judgment on equal protection but reverse judgment on her statutory claim.

## FACTS

Respondent County of Anoka employed appellant as an income maintenance specialist from December 5, 1990 until October 21, 1994, when she resigned due to incapacitating mental illness. Appellant began receiving long term disability (LTD) income through Anoka County in April 1995. The Anoka County LTD insurance policy through respondent Sun Life Assurance Company of Canada in effect in 1995 contained a limitation which classified beneficiaries with mental disabilities for reduced benefits. While the plan provided coverage until retirement age for the physically disabled, for a mental disability the plan provided that benefits after the first 24 months would only be payable if the employee was confined in a hospital or institution licensed to provide psychiatric treatment. Because appellant was not institutionalized in April 1997, her LTD benefits discontinued effective April 19, 1997.

Appellant filed a claim alleging discrimination based on disability with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a determination that Anoka County had violated appellant's rights under Title I of the Americans with Disabilities Act (ADA) because the county did not offer appellant a comparable LTD plan as that for physically disabled employees. Anoka County has since changed their LTD policy to provide identical coverage for all disabled.

Appellant filed this lawsuit, alleging that Anoka County's LTD policy violated her constitutional right to equal protection and discriminated against her because of her disability in violation of the ADA and the MHRA. Anoka County, respondent Allan T. Roth, individually and d/b/a A.T. Group, and Sun Life brought a motion to dismiss, or in the alternative, for summary judgment.

After a hearing, the district court granted summary judgment. Regarding the ADA claim, the district court ruled that appellant did not have standing under the ADA because she is not a qualified individual with a disability. Regarding the MHRA claim, the court ruled that appellant was unable to establish that the county discriminated against her because of her disability since all employees were offered the same policy with the same limitations regardless of their physical or mental health. As to equal protection, the court ruled that respondents satisfied the rational basis test because, for the county to consider cost and economic factors when purchasing disability insurance policies, it serves a legitimate purpose. On appeal, appellant challenges the MHRA and equal protection rulings.

## ISSUES

1. Did the district court err in granting summary judgment on the MHRA claim?

2. Did the district court err in granting summary judgment on the equal protection claim?

## ANALYSIS

 On appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

This court must view the evidence "in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). Statutory construction is a question of law that we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn. 1998). At the appellate oral argument, counsel for the parties agreed that there were no factual disputes and that this court should decide the issues presented as a matter of law.

■ 1. Appellant argues that the district court erred in granting adverse summary judgment on her MHRA claim. Under the MHRA, it is an unfair employment practice for an employer to discriminate with respect to employment privileges because of disability. Minn.Stat. § 363.03, subd. 1(2) (2000). The court here ruled that appellant was not able to establish that the county discriminated against her because of her disability since all employees are offered the same policy with the same limitations regardless of their physical or mental health.

■ Before reaching the merits, the parties argue whether appellant has standing to bring a MHRA claim. The MHRA prohibits employment discrimination except when based on a "bona fide occupational qualification." Minn.Stat. § 363.03, subd. 1. Respondents suggest that appellant does not have standing because she is unable to work. But while the ability to perform the essential functions of a position is a necessary prerequisite for being hired or retaining a position, it does not follow that this ability is necessary to seek relief for discrimination unrelated to holding a job. Indeed, if appellant were able to work she would not likely have qualified for disability benefits. We are satisfied that appellant has standing to bring her MHRA claim.

Respondents urge this court to follow federal ADA jurisprudence and rule that, where all employees are offered the same policy with the same limitations regardless of their physical or mental health, there is no discrimination because of disability under the MHRA. This is the rule that federal ADA decisions generally follow in health insurance cases. *See, e.g., Krauel v. Iowa Methodist Med. Ctr.,* 95 F.3d 674, 678 (8th Cir.1996) ("Insurance distinctions that apply equally to all insured employees, that is, to individuals with disabilities and to those who are not disabled, do not discriminate on the basis of disability.").

In 1993, an EEOC Guidance laid out the rule that with regard to *health* insurance plans there may be no ADA violation so long as all employees are offered the same policy. The Guidance stated:

It is important to note that not all health-related plan distinctions discriminate on the basis of disability. Insurance distinctions that are not based on disability, and that are applied equally to all insured employees, do not discriminate on the basis of disability and so do not violate the ADA.

For example, a feature of some employer provided health insurance plans is a distinction between the benefits provided for the treatment of physical conditions on the one hand, and the benefits provided for the treatment of "mental/nervous" conditions on the other. Typically, a lower level of benefits is provided for the treatment of mental/nervous conditions than is provided for the treatment of physical conditions. Similarly, some health insurance plans provide fewer benefits for "eye care" than for other physical conditions. Such broad distinctions, which apply to the treatment of a multitude of dissimilar conditions and which constrain individuals both with and without disabilities,

are not distinctions based on disability. Consequently, although such distinctions may have a greater impact on certain individuals with disabilities, they do not intentionally discriminate on the basis of disability and do not violate the ADA. EEOC Guidance at 6–7 (footnotes omitted), at http://www.eeoc.gov/docs/guidance.pdf.

But the 1993 Guidance specifically declined to extend this rule to fringe benefits such as long-term disability insurance:

> The purpose of this interim guidance is to assist Commission investigators in analyzing ADA charges which allege that a disability-based distinction in the terms or provisions of an employer provided health insurance plan violates the ADA. This interim guidance does not address the application of the ADA to other issues arising in the context of employer provided health insurance. Nor does it address the application of the ADA to other types of "fringe benefits," such as employer provided pension plans, life insurance, and disability insurance.

EEOC Guidance at 1. Indeed, the EEOC has taken the position that long-term disability insurance coverage that targets certain disabilities violates the ADA. *See, e.g., EEOC v. Aramark Corp.,* 208 F.3d 266 (D.C.Cir.2000); *EEOC v. Staten Island Sav. Bank,* 207 F.3d 144 (2d Cir.2000); *EEOC v. CNA Ins. Cos.,* 96 F.3d 1039 (7th Cir.1996).

Nonetheless, federal courts have extended the rule allowing disability-based distinctions in employer-provided health insurance plans into cases of long-term disability insurance. *See, e.g., Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1116 (9th Cir.2000) (rejecting argument that employers may not offer disability insurance policy giving different levels of benefits to those with different types of disabilities); *Lewis v. Kmart*

*Corp.,* 180 F.3d 166, 171–72 (4th Cir.1999) (upholding LTD policy cutting off mental disability benefits after 24 months). *But see Ford v. Schering–Plough Corp.,* 145 F.3d 601, 615 (3d Cir.1998) (Alito, J. concurring) ("such distinctions * * * constitute discrimination in the most basic sense of the word").

Appellant argues that federal interpretation of the ADA does not control our interpretation of the MHRA. Indeed, although we may look to federal cases for guidance in interpreting the MHRA, we are free to decline to follow the federal rule. *See Cummings v. Koehnen,* 568 N.W.2d 418, 422 n. 5 (Minn.1997) (rejecting federal rule that proof of disparate impact on one gender is necessary element of sexual harassment claim). In a case that is particularly instructive to the issue here, our supreme court went beyond the federal law at the time and ruled that excluding only pregnancy-related disabilities from an otherwise comprehensive income maintenance plan was "per se sex discrimination" within the meaning of the MHRA. *Minnesota Mining & Mfg. Co. v. State,* 289 N.W.2d 396, 397 (Minn.1979).

In *Minnesota Mining,* the employer specifically excluded absences due to pregnancy-related disabilities from monetary compensation under its comprehensive income maintenance plan. 289 N.W.2d at 398. An employee alleged sex discrimination in violation of the MHRA. *Id.* at 397–98. The employer argued that it was not discriminating on the basis of sex when it excluded pregnancy-related absences as the policy applied equally to men and women. *Id.* at 398. In interpreting Title VII, the United States Supreme Court had recently held that an exclusion of pregnancy from a disability-benefits plan providing general coverage was not sex-based discrimination because the same facially nondiscriminatory plan covers both men and

women. *General Elec. Co. v. Gilbert,* 429 U.S. 125, 138, 97 S.Ct. 401, 409, 50 L.Ed.2d 343 (1976). Nonetheless, our supreme court held that excluding only pregnancy-related disabilities from an otherwise comprehensive income maintenance plan is per se sex discrimination in violation of the MHRA. *Minnesota Mining,* 289 N.W.2d at 400.

· Respondents contend that a long-term disability policy that specifically excludes the mentally disabled from full coverage is not disability-based discrimination because the same plan with the same limitations is offered to all employees regardless of their physical or mental health. This argument is similar to the *Gilbert* rule that was rejected in *Minnesota Mining.* In *Minnesota Mining,* the court noted that the exclusion of pregnancy-related disabilities seemed to clearly reflect stereotypes of traditional sexual roles. 289 N.W.2d at 400. Similarly, the exclusion here seems to reflect the traditional stereotypes of mental illness. When the county solicited bids for LTD coverage in 1994, all submitted bids limited benefits for disability claims based on mental illness, which was apparently standard in the industry at that time.

Minnesota courts have "consistently held that the remedial nature of the Minnesota Human Rights Act requires liberal construction of its terms." *Cybyske v. Independent Sch. Dist. No. 196,* 347 N.W.2d 256, 264 (Minn.1984). Minnesota has a clear public policy prohibiting discrimination against the disabled in insurance coverage. *See* Minn.Stat. § 72A.20, subd. 8(a) (2000) (unfair and deceptive act for insurance company to discriminate on basis of disability in terms and conditions of life insurance unless differences are based on actuarial data). The differential treatment in this case appears to reflect the traditional insurance industry practice of ex-

cluding the mentally disabled from full long-term disability coverage.

■ We hold that differences in long-term disability benefits based merely on whether an employee is physically or mentally disabled is discrimination in violation of the MHRA. Further, if we were to affirm the district court, we question whether such a distinction could remain tenable. For example, consider whether conditions such as Alzheimer's disease or schizophrenia are mental or physical disabilities, and the potential pitfalls inherent in such a dichotomy become apparent.

■ 2. Appellant argues that the district court erred in granting adverse summary judgment on her equal protection claim. Both the federal and state equal protection clauses mandate that the state treat similarly situated individuals alike and deem invidious discrimination constitutionally offensive. *Scott v. Minneapolis Police Relief Ass'n, Inc.,* 615 N.W.2d 66, 74 (Minn.2000). Unless an equal protection challenge "involves a suspect classification or a fundamental right, we review the challenge under a rational basis standard under both the state and federal constitutions." *Id.* Appellant argues that the disabled should be considered a quasi-suspect class accorded a heightened standard for review, but we can find no precedent for doing so. *Cf. In re Ultraflex Enterprises' Appeal from Decertification in Minn. Small Bus. Procurement Program,* 497 N.W.2d 641, 644 (Minn.App.1993) (rational basis test applied to equal protection disability challenge).

■ Under the rational basis test, the challenged classification is presumed valid and will be sustained if the classification is reasonably related to a legitimate state interest. *Scott,* 615 N.W.2d at 74. Under the test, the rationale supporting

the classification need not have been articulated at any time by the governing decision-maker. *Nordlinger v. Hahn,* 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992). Here, the district court stated that providing shorter-term LTD benefits for mentally disabled certainly serves the county's legitimate purpose of considering cost factors. While there are preferable nondiscriminatory ways to decrease costs, it appears nonetheless debatable whether singling out mentally disabled for reduced coverage would reasonably decrease the cost of disability insurance. *See Essling v. Markman,* 335 N.W.2d 237, 240 (Minn. 1983) (stating party challenging constitutionality of statute cannot prevail under rational basis test so long as the question is at least debatable).

## DECISION

We affirm summary judgment on the equal protection claim. Differences in long-term disability benefits based merely on whether an employee is physically or mentally disabled is discrimination in violation of the MHRA. Accordingly, we reverse summary judgment on appellant's MHRA claim, for which judgment should be entered in favor of appellant on uncontested facts as a matter of law.

**Affirmed in part and reversed in part.**