David **GRANVILLE** and Marlyss Granville as parents and natural guardians of Kailynn Granville, a minor, Appellants,

Jacqueline Johnson, as parent and natural guardian of Shanel Andrews, a minor, Appellant,

v.

**MINNEAPOLIS PUBLIC SCHOOLS, SPECIAL SCHOOL DISTRICT NO. 1, Respondent.**

Nos. C6–03–135, C8–03–136.

Court of Appeals of Minnesota.

Sept. 2, 2003.

Paula M. Jossart, Michael L. Weiner, Christopher J. Moreland, Yaeger, Jungbauer, Barczak & Vucinovich, P.L.C., Minneapolis, for appellants.

Eric J. Magnuson, Nell E. Mathews, Kimberly T. Ross, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for respondent.

Considered and decided by WRIGHT, Judge, LANSING, Judge, and PARKER, Judge.*

## OPINION

WRIGHT, Judge.

Appellants David and Marlyss Granville and Jacqueline Johnson (appellants collectively) are parents of African–American students who were injured in a physical education class at Loring Elementary School in Minneapolis. Appellants filed a lawsuit against respondent Minneapolis Public Schools, Special School District No. 1 (the school district), which moved to dismiss all claims pursuant to Minn. R. Civ. P. 12.02(e) based on immunity granted by operation of Minn.Stat. § 466.12, subd. 3a (2002). After appellants challenged the constitutionality of the provision, the district court dismissed the claims, ruling that section 466.12, subdivision 3a, is constitutional and protects the school district from tort liability. Appellants contend that the district court erred when it dismissed appellants' claims because the statute violates the Equal Protection Clauses of the United States and Minnesota Constitutions. We affirm in part, reverse in part, and remand.

## FACTS

On November 1, 2001, Loring Elementary School students Shanel Andrews and Kailynn Granville, who are African–American, were injured while participating in a game of "flashlight tag" during physical education class. The parents of both children sued the school district to recover for personal injuries. The school district moved to dismiss the suit pursuant to Minn. R. Civ. P. 12.02(e), asserting that it is immune from tort liability under Minn. Stat. § 466.12, subd. 3a (2002), which provides immunity for school districts that are unable to obtain insurance for an average rate of $1.50 or less per pupil. Appellants countered that Minn.Stat. § 466.12, subd. 3a, violates the Equal Protection Clauses of the United States and Minnesota Constitutions. The district court granted respondent's motion to dismiss. These consolidated appeals followed.

## ISSUE

Did the district court err when it ruled that, as applied to appellants, Minn.Stat. § 466.12, subd. 3a (2002), is constitutional?

## ANALYSIS

When reviewing a dismissal for failure to state a claim on which relief can be granted pursuant to Rule 12.02(e), we determine whether the complaint sets forth a legally sufficient claim for relief. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

550, 553 (Minn.2003); *Elzie v. Comm'r of Pub. Safety,* 298 N.W.2d 29, 32 (Minn. 1980). We, therefore, apply a de novo standard of review. *Bodah,* 663 N.W.2d at 553. "[I]t is immaterial whether or not the plaintiff can prove the facts alleged, and [an appellate court] will not uphold a Rule 12.02(e) dismissal if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded[.]" *Martens v. Minn. Min. & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn.2000) (quotation and citations omitted). We consider only the facts alleged in the complaint, accept those facts as true, and construe all reasonable inferences in favor of the nonmoving party. *Bodah,* 663 N.W.2d at 553.

■ We must determine whether the district court erred when it ruled that, as applied to appellants, Minn.Stat. § 466.12, subd. 3a (2002), does not violate the Equal Protection Clause of either the United States Constitution or the Minnesota Constitution. "Evaluating a statute's constitutionality is a question of law." *Hamilton v. Comm'r of Pub. Safety,* 600 N.W.2d 720, 722 (Minn.1999). Accordingly, we are not bound by the district court's conclusions. *In re Blilie,* 494 N.W.2d 877, 881 (Minn. 1993) (quoting *Sherek v. Indep. Sch. Dist. No. 699, Gilbert,* 449 N.W.2d 434, 436 (Minn.1990)). Minnesota statutes enjoy a presumption of constitutionality, and we exercise our power to declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989).

The Equal Protection Clause of the United States Constitution guarantees that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Minnesota Constitution guarantees that "[n]o member of this state shall

be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. 1, § 2. The Minnesota Supreme Court has explained that "[b]oth clauses have been analyzed under the same principles and ... mandate that all similarly situated individuals shall be treated alike, but only 'invidious discrimination' is deemed constitutionally offensive." *Scott v. Minneapolis Police Relief Ass'n,* 615 N.W.2d 66, 74 (Minn.2000).

■ We begin every analysis of an equal-protection challenge by determining "whether the challenged classification must satisfy strict scrutiny or merely the rational basis standard." *Erlandson v. Kiffmeyer,* 659 N.W.2d 724, 733 (Minn. 2003). We apply strict scrutiny to legislatively created classifications in two situations: (1) when they impermissibly limit a fundamental right and (2) when they involve a suspect classification. *Krueth v. Indep. Sch. Dist. No. 38,* 496 N.W.2d 829, 835 (Minn.App.1993) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)), *review denied* (Minn. Apr. 20, 1993). "If a constitutional challenge involves neither a suspect classification nor a fundamental right, we review the challenge under a rational basis standard...." *Kolton v. County of Anoka,* 645 N.W.2d 403, 411 (Minn.2002).

The statute at issue in this case requires school districts to obtain liability insurance but provides immunity from tort liability if the commissioner of insurance certifies that a school district is unable to obtain insurance for an average cost of $1.50 or less per pupil per year.

A school district shall procure insurance as provided in section 466.06, meeting the requirements of section 466.04, if it is able to obtain insurance and the cost

thereof does not exceed $1.50 per pupil per year for the average number of pupils. If, after a good faith attempt to procure such insurance, a school district is unable to do so, and the commissioner of insurance certifies that such insurance is unobtainable, it shall be subject to the provisions of subdivisions 1 and 2. If the school district fails to make a good faith attempt to procure such insurance and the commissioner of insurance does not certify that such insurance is unobtainable, then in that event section 466.12 shall not apply to such a school district and it shall be subject to all of the other applicable provisions of chapter 466.

Minn.Stat. § 466.12, subd. 3a.

The school district attempted to obtain insurance within the cost limits but was certified by the commissioner of insurance as unable to do so in accordance with Minn.Stat. § 466.12, subd 3a, and, therefore, was immune from tort liability. Appellants assert that the school district, whose student population is 45 percent African–American, is the only one in the state to request or receive certification. They argue that, consequently, this immunity creates a class of African–American students who are prevented from suing the school district and whose rights, therefore, are violated under the Equal Protection Clause of the state and federal constitutions.

The district court applied a rational-basis test to the statute and concluded that it was constitutional. Appellants contend that the district court erred when it failed to apply the strict scrutiny standard to the statute at issue for two reasons. First, they allege that the operation of the statute creates an unconstitutional racial classification, disparately impacting African–American students, and second, they assert that the fundamental right to sue the

school district is impinged by the operation of the challenged statute.

## A. Racial Classification

 A classification based on race is a suspect classification. *Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944). We, therefore, apply strict scrutiny to a challenged statute if it burdens one racial group. *Krueth,* 496 N.W.2d at 835. Strict scrutiny provides that racial classifications "are constitutional only if they are narrowly tailored measures that further compelling governmental interests." *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 227, 115 S.Ct. 2097, 2113, 132 L.Ed.2d 158 (1995).

> There are two alternative ways of demonstrating the existence of a race or national origin classification. One is where the classification exists on the face of the law * * *. Alternatively, if a law is facially neutral, a race or national origin classification might be proven by demonstrating discriminatory administration or discriminatory impact.

Erwin Chemerinsky, *Constitutional Law: Principles and Policies* § 9.3.3 (1997). While appellants concede that "Minn.Stat. § 466.12, subd. 3a, does not present a racial classification per se" they assert that application of the statute creates a disparate impact on African–American students who attend Minneapolis public schools. Because of their divergent treatment of this issue, it is necessary to analyze separately the federal and state constitutions.

### 1. Federal Constitutional Law

 Under the federal constitution, disparate impact alone, without proof of discriminatory purpose, does not violate the Equal Protection Clause. *See Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, (1976) (acknowledging "the basic equal protection

principle that the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose"). Here, appellants do not allege any discriminatory purpose associated with the statute. Rather, appellants assert that an inference of invidious discrimination can be drawn from the statute's disparate impact on African–American students. As an initial matter, we conclude that appellants' argument does not accurately characterize the class of individuals created by the statute's operation. Appellants allege the statute creates a class of African–American students who are prevented from suing the school district. This argument is unpersuasive. Clearly, the operation of the statute prevents any person injured by the school district under any circumstances, regardless of race, from bringing suit. Further, the alleged disparate impact itself is the only proof of discriminatory purpose offered by appellants, which falls short of federal constitutional requirements. *See Washington,* 426 U.S. at 238–39, 96 S.Ct. at 2047 (declining to embrace the proposition that a law is unconstitutional solely because it has a racially disproportionate impact). We conclude that appellants have not shown a racial classification warranting application of strict scrutiny under federal constitutional law.

### 2. *Minnesota Constitutional Law*

■ Citing *State v. Russell,* 477 N.W.2d 886 (Minn.1991), appellants contend that the Minnesota Supreme Court has implied that strict scrutiny is warranted in cases where a statute's application results in disparate impact. In *Russell,* individuals charged with possession of crack cocaine moved to dismiss the charges, alleging a violation of the equal protection guarantees in both the federal and state constitutions. *Id.* at 887. They asserted that a statute requiring possession of three grams of crack cocaine for a third-degree offense as opposed to ten grams of cocaine powder was violative of equal protection. *Id.* Although the *Russell* defendants argued that the statute had a disparate racial impact because crack cocaine is used predominantly by African Americans and cocaine powder is used predominantly by whites, the supreme court did not apply strict scrutiny. *Id.* at 888–89. Instead, the *Russell* court examined the classification between users of the two substances under "an independent Minnesota constitutional standard of rational basis review," which is more stringent than the federal rational-basis test. *Id.* at 889. Although appellants argue that the *Russell* decision supports the application of strict scrutiny when only disparate racial impact, and not intentional discrimination, can be shown, *Russell* only expressly held that the more stringent Minnesota rational-basis test should be applied in such cases.

> It is particularly appropriate that we apply our stricter standard of rational basis review in a case such as this where the challenged classification appears to impose a substantially disproportionate burden on the very class of persons whose history inspired the principles of equal protection.

*Id.; see also State v. Frazier,* 649 N.W.2d 828, 841 (Minn.2002) (Page, J., dissenting) (stating that, in *Russell,* "this court utilized a more protective approach under the Minnesota Constitution to strike down a facially neutral criminal statute that had a discriminatory impact on blacks"); Ann L. Iijima, *Minnesota Equal Protection in the Third Millennium: "Old Formulations" Or "New Articulations"?,* 20 Wm. Mitchell L.Rev. 337, 356 (1994) (stating that the *Russell* court "indicate[d] that the disparate impact on African Americans imposed by the crack/cocaine distinction was one of the persuasive factors encouraging use of

the less deferential analysis"). Further, because the *Russell* court held that the challenged statute did not pass the Minnesota rational-basis test, it expressly deferred the decision of whether strict scrutiny should be applied in cases involving disparate racial impact. *See Russell*, 477 N.W.2d at 888 n. 2 (stating that whether strict scrutiny should be applied "need not be decided today, however, because we find the statute unconstitutional under the Minnesota rational basis test"). Under both the federal and state constitutions, we decline to apply strict scrutiny. Based on *Russell*, assuming appellants' allegations of disparate impact to be true, we apply Minnesota's "stricter standard of rational basis review." *Id.* at 889.

## B. Fundamental Right

In addition to their argument that the statute creates an unconstitutional racial classification, appellants contend that strict scrutiny should apply because a fundamental right is implicated by the operation of Minn.Stat. § 466.12, subd. 3a.

### 1. Federal Constitutional Law

 Appellants do not explicitly argue that the right to sue a governmental entity is a fundamental right under the federal constitution, and our review of the caselaw demonstrates that it is not. Fundamental rights are those "deeply rooted in this Nation's history and tradition." *Moore v. City of E. Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977); *see, e.g., Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) (right to familial relations fundamental); *Zablocki v. Redhail*, 434 U.S. 374, 383–84, 98 S.Ct. 673, 679–80, 54 L.Ed.2d 618 (1978) (right to marry fundamental); *Reynolds v. Sims*, 377 U.S. 533, 559–60, 84 S.Ct. 1362, 1380, 12 L.Ed.2d 506 (1964) (voting rights fundamental). The right to sue a governmental

entity is not discussed in caselaw, and we conclude that it is not analogous to any of the rights that the United States Supreme Court has declared to be fundamental. Under the federal constitution, appellants have not demonstrated such impingement of a fundamental right as to justify application of strict scrutiny.

### 2. Minnesota Constitutional Law

 Appellants argue that, by being prevented from suing the school district, a fundamental right to "[r]edress of injuries or wrongs" is affected, and strict scrutiny should be applied. This argument is unavailing. "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws." Minn. Const. art. I, § 8. Minnesota courts have never stated that the right to sue a governmental entity is "fundamental" for the purpose of invoking strict scrutiny. Further, when reviewing constitutional challenges to other governmental immunity statutes, courts have applied a rational-basis test rather than strict scrutiny. *See, e.g., Bernthal v. City of St. Paul*, 376 N.W.2d 422, 424 & n. 5 (Minn.1985) (noting that all constitutional challenges of the municipal tort liability statute have required application of the rational-basis test); *Green–Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491, 494 (Minn.1984) (holding that state outdoor recreational immunity statute did not violate Equal Protection Clause of United States Constitution under rational-basis test); *Lloyd v. City of St. Paul*, 538 N.W.2d 921, 924–25 (Minn.App.1995) (applying rational-basis test to state outdoor recreational immunity statute), *review denied* (Minn. Dec. 20, 1995).

Further, "the purpose of article I, section 8 of the Minnesota Constitution is to preserve remedies under common law." *Johnson v. State,* 478 N.W.2d 769, 773 (Minn.App.1991), *review denied* (Minn. Feb. 27, 1992); *see also Hickman v. Group Health Plan, Inc.,* 396 N.W.2d 10, 14 (Minn.1986). In 1962, the Minnesota Supreme Court expressed "its intention to overrule the doctrine of sovereign tort immunity as a defense with respect to tort claims against school districts[.]" *Spanel v. Mounds View Sch. Dist. No. 621,* 264 Minn. 279, 292, 118 N.W.2d 795, 803 (1962). In response to *Spanel,* "the legislature enacted Minn.Stat. ch. 466, the Municipal Tort Liability Act, which imposes liability—subject to the limitations set out in the other sections of the Act—on every municipality for its torts[.]" *Doyle v. City of Roseville,* 524 N.W.2d 461, 462 (Minn. 1994). The provisions of chapter 466 include school districts. *See* Minn.Stat. § 466.01, subd. 1 (including a school district in the definition of "municipality"). We conclude that, because liability is imposed on the school district by statutory law and not common law, no right protected by article I, section 8, of the Minnesota Constitution is implicated. Because a fundamental right is not implicated by the operation of Minn.Stat. § 466.12, subd. 3a, we do not apply strict scrutiny. Accordingly, the appropriate standard to apply is the rational-basis test.

Minnesota courts apply two formulations of the rational-basis test to determine whether a challenged classification is rationally related to a legitimate governmental purpose.

One formulation is the standard articulated by federal courts for the Equal Protection Clause of the Fourteenth Amendment, where it must be determined whether the challenged classification has a legitimate purpose and whether it was reasonable to believe that use of the challenged classification would promote that purpose.

*Kolton v. County of Anoka,* 645 N.W.2d 403, 411 (Minn.2002) (citing *W. & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981) and *Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 329 (Minn. 1990)). A second formulation, often referred to as the Minnesota rational-basis test, requires:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Russell,* 477 N.W.2d at 888 (quoting *Wegan v. Vill. of Lexington,* 309 N.W.2d 273, 280 (Minn.1981)). For purposes of federal constitutional analysis, "[t]he general rule is that [the] legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254.

Here, in the context of a Rule 12.02(e) motion to dismiss, we conclude that the record, in its current state, does not permit the determination of whether Minn. Stat. § 466.12, subd. 3a, passes the rational-basis test in either of its formulations. At this early stage of the proceedings, there is insufficient evidence from which

the district court can determine whether the legislature's choice of a rate of $1.50 per student is arbitrary under current market conditions, as appellants assert, or, on the contrary, creates a constitutional classification that is relevant to the statute's purpose. The rate of $1.50 per pupil has not changed since subdivision 3a was enacted in 1969. *See* Minn.Stat. § 466.12, subd. 3a (1969). In order to decide whether the statute meets the federal and state rational-basis tests, evidence demonstrating whether immunity triggered by the $1.50 per pupil rate permits constitutional operation of the statute is required. Without such analysis, the district court's conclusion that the school district is entitled to immunity is erroneous. Appellants' claims are legally sufficient to survive a motion to dismiss for failure to state a claim on which relief could be granted pursuant to Rule 12.02(e). We, therefore, conclude that the district court erred when it granted the school district's motion to dismiss.

## DECISION

The district court properly ruled that, in examining appellants' challenge to Minn. Stat. § 466.12, subd. 3a (2002), the appropriate constitutional test is the rational-basis test. But because the district court erred in dismissing appellants' claims, we reverse the district court's dismissal and remand for further proceedings.

**Affirmed in part, reversed in part, and remanded.**